```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| RECTEC, LLC | CIVIL ACTION |
| v. | NO. 07-7126 |
| ALLIED ERECTING & DISMANTLING CO., INC. | SECTION "F" |

## ORDER AND REASONS

Before the Court is Allied's Motion to Dismiss pursuant to FRCP 12(B)(2) or Motion to Transfer Venue pursuant to Federal Rule of Civil Procedure 1404(a). For the reasons that follow Allied's motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff, Rectec, a Louisiana limited liability company with its principal place of business in Tangipahoa Parish, Louisiana, is in the business of scrap metal processing at locations that are owned and operated by Rectec and supplying crews to work at sites owned and operated by third parties. Defendant, Allied, a corporation organized under the laws of the State of Ohio, with its principal place of business located in Youngstown, Ohio, is an industrial dismantling contractor.

Beginning in or around December 2005 until July 2007, Rectec provided labor for two construction sites at which Allied was performing work for U.S. Steel: (1) Fairfield, Alabama and (2) Fairless Hills, Pennsylvania. Rectec also provided labor to Allied at its scrapyard in Youngstown, Ohio.

On or about September 20, 2007, Rectec filed suit in the Twenty First Judicial District Court for the Parish of Tangipahoa, Louisiana, alleging that Allied had not paid a balance of $159,707.13 due on their account. On October 22, 2007, Allied filed a removal of Rectec's petition to this Court pursuant to 28 U.S.C. § 1446(b). This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332; plaintiff and defendant are completely diverse and the amount in controversy exceeds $75,000.

Allied now moves this Court to dismiss Rectec's complaint, arguing that Louisiana does not have jurisdiction over Allied under the Louisiana Long Arm Statute, La. Rev. Stat. § 13:3201, and the Due Process Clause of the 14th Amendment. In the alternative, Allied requests that this Court transfer this action to the Northern District of Ohio, Eastern Division (Youngstown).

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in the plaintiff's favor and all facts pleaded in the complaint must be taken as true. See Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986). This Court cannot dismiss a complaint under Rule

12(b)(6) unless it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of his claim which would entitle him to relief.  Bell Atlantic Corp. v. Twombly, No. 05-1126, slip op. at 7-12 (U.S. May 21, 2007).

II.

Allied contends that it has not had the necessary contacts with the State of Louisiana to justify an exercise of personal jurisdiction.  When a defendant raises the defense of a court's lack of personal jurisdiction, the plaintiff bears the burden of proving "specific facts supporting the proper exercise of jurisdiction."  Brown v. Brown & Williamson Tobacco Corp.,2005 WL 2005 U.S. Dist. LEXIS 20987 (W.D. La.) at *4, citing Jobe v. ATR Marketing, Inc., 87 F.3d 751, 752 (5th Cir. 1996).  The court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery.  Jobe, 87 F.3d 753.

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under the law of that state.  Fed. R. Civ. P. 4(e); Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 752 (5th Cir. 2002).  A federal court sitting in diversity may exercise jurisdiction over a non-resident defendant only if (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is

consistent with due process under the U.S. Constitution.  <u>Brown</u>, 2005 U.S. Dist. LEXIS 20987 at *4 citing <u>Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.</u>, 9 F.3d 415, 418 (5th Cir. 1993).  The Louisiana Long-Arm Statute is coterminous with the Due Process clause.  <u>La. Rev. Stat</u>. § 13:3201(b).  As a result, "the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements.  <u>Patin</u>, 294 F.3d at 652.

Due process protects a non-resident defendant from judgment in a forum with which "it has established no meaningful contacts, ties or relations."  <u>Brown</u>, 2005 U.S. Dist. LEXIS 20987 at *5.  The constitutional touchstone for the exercise of personal jurisdiction is whether the defendant purposefully established "minimum contacts" with the forum state.  <u>Henry v. Gallop, Johnson & Neuman, L.C.</u>, No. 04-0917, 2004 U.S. Dist. LEXIS 19730 (E.D. La.) at *4 <u>quoting</u> <u>Asahi Metal Indus. Co. Ltd. V. Super Ct. of Cal., Solano County</u>, 480 U.S. 102, 108-09 (1987).

The minimum contacts test takes two forms, and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court seeks to exercise general or specific jurisdiction over the defendant.  General jurisdiction permits a court to exercise personal jurisdiction over a defendant on any claim, regardless of the subject matter, because the defendant has engaged in such

"systematic and continuous" activities in the forum state so as to have a presence there.  Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 (1984).  Conversely, if a plaintiff asserts specific jurisdiction whether the "litigation results from alleged injuries that arise out of or relate to the defendant's contacts with the forum state, [then] it is the relationship among the defendant, the forum, and the litigation that must be examined to determine whether the defendant has purposefully availed himself of the forum state's benefits and protections."  Henry, 2004 U.S. Dist. LEXIS 19730 at *5.  When a defendant has a strong relationship to the litigated claim and the claim has a strong relationship with the forum, the court will have specific jurisdiction.  Id.  The Court will address both theories of jurisdiction.

    A.   SPECIFIC JURISDICTION

The Fifth Circuit has refined the analysis of specific jurisdiction into a three-part test: (1) Did the defendant have minimum contacts with the forum state- purposefully directing its activities toward the forum state or purposefully availing itself of the privilege of conducting activities therein?  (2) Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts?  (3) Would the exercise of personal jurisdiction be reasonable and fair?  See Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999).  It is

uncontested by Allied, at this time, that plaintiff's cause of action arises out of or results from the defendant's forum-related contact, as they submit that Rectec's alleged claim appears to be based on the only *de minimis* contact that Allied could allegedly have with Louisiana- its telephonic, facsimile and email communications with Rectec.  The test's first and third prong, however, are sharply contested.

> 1. Does Allied have the minimum contacts necessary for this Court to exercise jurisdiction?

The first prong of the analysis requires that the plaintiff must establish that the defendant purposefully availed itself of the privilege of conducting activities in the forum, thus invoking the benefits and protections of its laws.  Jones v. Petty-Ray Geophysical, 954 F.2d 1061, 1086 (5th Cir. 1992) quoting Hanson v. Denckla, 357 U.S. 235 (1958) (internal quotation marks omitted).

> i. The contract between Rectec and Allied was performed outside of Louisiana.

In contract cases, the Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a...resident is sufficiently purposeful to satisfy minimum contacts."  Jones, 954 F.2d at 1066 citing Barnstone v. Congregation Am. Echad, 575 F.2d 286, 288 (5th Cir. 1978); accord St. Martin & Mahoney, APLC v. Diversified Aircraft Holdings, Ltd., 934 F.Supp. 200, 205 (E.D.

La. 1996)("[O]ne of the most pivotal considerations in determining whether there has been 'purposeful availment' is where the material performance of the contract was centered.").

In this case, all of the material performance was outside of Louisiana. Rectec was obligated to provide workers to three Allied job sites, none of which were located in Louisiana. Allied's sole obligation was to pay Rectec for its services. This payment was sent by Allied, from its corporate offices in Ohio, to Rectec, located at Compass Bank in Birmingham, Alabama.[1] Accordingly, no part of the contract was performed in Louisiana.

    ii. The process of contract formation does not establish the necessary contacts for specific jurisdiction.

"The place of contracting," the Fifth Circuit has observed, "and the law governing the contract, while not necessarily determinative, are relevant factors in determining purposeful activity." Jones, 954 F.2d at 1069. citing Sw. Offset, Inc. v. Hudco Pub. Co., 622 F.2d 149, 152 (5th Cir. 1980).

Rectec bases its assertion of personal jurisdiction on the fact that Allied "actively sought out" Rectec in Louisiana. Conceding that the work was to be performed outside of Louisiana,

---

[1] In the Petition for Damages, Rectec stated that "Retec agreed to bill Allied for services provided on an open account basis with the account being created and maintained here in the Parish of Tangipahoa, State of Louisiana." Plaintiffs rely on the location of the account being in Louisiana to bolster its argument that jurisdiction is proper in Louisiana. However, after additional discovery on the issue of personal jurisdiction was completed, it was determined that the account into which Allied paid money, and from which Rectec paid its workers it supplied to the Allied job sites, was maintained at the Compass bank in Birmingham, Alabama.

7

Rectec contends that the telephone calls and emails between John Ramun, President of Allied, and Richard Friederichsen, Manager of Rectec for the purpose of contract negotiation and formation, are adequate to show that Allied purposefully established minimum contacts with this jurisdiction.

For Rectec to maintain this assertion, it must ignore the clear line of precedent in the Fifth Circuit holding that contracting with an entity who happens to reside in Louisiana is not sufficient to justify the extension of personal jurisdiction over a nonresident.  In Jones, the Fifth Circuit considered a case in which part of the contractual negotiations took place by way of telex between France, where the non-resident defendant was located, and Texas, the forum state in question.  The Court held that this negotiation was "insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws."  Id. citing Hydrokinetics, Inc. v. Alaska Mech., Inc., 700 F.2d 1026, 1029 (5th Cir. 1983).

In Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986), the court similarly concluded that an exchange of communications between the defendant and the plaintiff in the forum state to develop a contract is insufficient to constitute purposeful availment because such interactions rest on nothing but the mere fortuity that the plaintiff happened to be a resident of the forum.

In St. Martin & Mahoney, APLC v. Diversified Aircraft Holdings, Ltd., 934 F.Supp. 200 (E.D. La. 1996), Judge Fallon declined to exercise personal jurisdiction even though the defendant had sent a fax to the plaintiff in Louisiana for the purpose of forming a contract to purchase an airplane. The material place of performance was outside of Louisiana, and the court found that the presence of the plaintiff in Louisiana would not be enough to garner personal jurisdiction, even though the suit pertained to the subject matter of the contract. The Court stated that "merely contracting with a resident of the forum is insufficient to subject the nonresident to the forum's jurisdiction." Id. at 204.

In the present case, the only contacts Allied had with Rectec were telephone and fax communications pertaining to the negotiation and formation of the contract. Any contact with Louisiana by Allied was simply a result of the "mere fortuity" that Rectec is located in the state and not enough to hail Allied into Court.

> iii. The forum selection clause mandates that suit be brought in Ohio.

The presence of a forum selection clause also speaks to whether a defendant has purposefully availed itself of the forum state. When considering forum selection and choice of law provisions, some courts have stated that, at the very least, they "warrant some weight in considering whether a defendant has

purposefully invoked the benefits and protection of a state's laws for jurisdictional purposes," although the clause alone is not dispositive. Stuart v. Spademan, 772 F.2d 1185, 1195 (5th Cir. 1985). The Fifth Circuit has also noted that a choice of law provision in favor of a foreign forum diminishes the significance of other contacts with the plaintiff's choice of forum. Holt Oil, 801 F.2d at 778.

A forum selection clause and the choice of law provision are clearly spelled out in the Purchase Order agreement. The Purchase Orders stipulate that the contractual agreement:

> shall be interpreted and construed in accordance with the Commercial Code and the laws of the state of Ohio...[i]in the event it becomes necessary for Buyer or Seller to take any legal action with respect to this Purchase Order, any lawsuit must be commenced in the United States District Court for the Northern District of Ohio, or any proper Ohio State Court located in Mahoning County, Ohio.

Allied asserts that the Purchase Orders, sent by Allied and accepted by Rectec, are the governing contractual documents. Rectec, on the other hand, submits that emails exchanged between Mr. Ramun and Mr. Friederichsen established the terms of the contract between the two parties. Because choice of law and choice of venue clauses were not contained in any of those emails, Rectec submits that the only contract that existed between the parties is silent on the issue of choice of law and choice of forum. The Court must determine whether the Purchase Orders do, in fact, govern the contractual terms between Allied

and Rectec.

     a.   Do the Purchase Orders provide the actual governing terms of the contract between Allied and Rectec?

In the Petition, Rectec states that Allied "faxed its acceptance" of Rectec's "proposal to provide crews to work sites." Allied argues that in making this statement, Rectec misapprehends basic principles of contract formation and asserts that the proposals sent by Rectec were simply bids for potential business; they did not give Allied the power to accept the terms.

How did the parties contract? A series of emails was indeed exchanged between Mr. Ramun and Mr. Friederichsen which included a written proposal that Allied drafted, but which Rectec placed on its letterhead and submitted to Allied.[2] An examination of the email exchange between Ramun and Friederichsen shows that Friederichsen asks for a minimum work week of fifty hours for the laborers that Rectec was to supply to Allied job sites. In his response email, Ramun rejects the fifty hour week term. Immediately following this email exchange came a series of proposals with language drafted by Allied, which was ultimately used by Allied for the Fairless, Fairfield and Youngstown worksites. These proposals specifically stipulated that "[t]here is no minimum work week requirement or guarantee." The emails between Friederichsen and Ramun cannot, then, be the final

---

[2] Rectec objects to referring to these emails as proposals. It submits it began work based on the agreed to terms contained in these emails.

governing documents because they have terms that were explicitly rejected by Ramun and Allied.

The proposals also contain an additional term that was not honored by the parties.  The proposals dictate that the invoices for labor were to be paid on a "net 7" basis, meaning that when Rectec submitted an invoice to be paid, Allied was to pay it within seven days.  The Purchase Orders, by contrast, indicate that they would be paid on a "net 30" basis, meaning that Allied would pay any invoices within thirty days.  The deposition of Cara Klerk establishes that Allied, in fact, paid Rectec's invoices approximately every thirty days, not every seven days.  Also, the affidavit of Jeremy Collins, employee of Allied who was in charge of accounts payable, demonstrates that Allied's payments to Rectec were made, on average, every 20.87 days, which is consistent with a net 30 basis, not a net 7 basis.  The payment and accpetance of payment by the parties is in contradiction to the terms of the proposal and in accordance with the terms of the Purchase Orders.

In his deposition, Mr. Ramun testified that he made clear to Mr. Freiderichsen from the beginning of Rectec's engagement to supply workers to Allied sites that a Purchase Order would be required to from the contract and that the contract would be governed by those terms.  All of the Purchase Orders were then sent

in their entirety to Rectec.[3] No one from Rectec ever objected to any of the terms contained within the Purchase Orders. The jurisdictional facts of record are clear.

Allied argues, and this Court agrees, that Rectec performed its obligations pursuant to its receipt of the Purchase Orders, thereby accepting and assenting to their terms.[4] See, e.g., Ellsworth, Leblanc & Ellsworth, Inc. v. Strategic Outsourcing, Inc., No. 03-0613, 2003 U.S. Dist. LEXIS 13546, at *12 (E.D. La. 2003)("[O]ffer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent...[T]here need not be conformity between the manner in which the offer is made and the manner in which acceptance is made."); Lyle Cashion Co. v. McKendrick, 97 F.Supp. 1008, 1011 (E.D. La. 1951)("Acceptance of [an] offer may be communicated by conduct or actions," including taking actions in accordance with previously delineated contractual language).

    b.    Because the Purchase Orders provide the actual governing terms of the contract between Allied and Rectec, the

---

[3] Rectec originally based its assertion that its contract with Allied was not governed by the Purchase Orders on an allegation that no one at Rectec's offices ever received the Purchase Orders. However, complete copies of the Purchase Orders were found in Rectec's files produced during discovery. Further, Cara Klerk, the executive assisant to Mr. Friederichsen and assistant at one of Rectec's offices, stated in her deposition that she would have given Mr. Friederichsen the Purchase Orders to read when they came in the mail because Allied was his client.

[4] Allied points out that while it maintains that Rectec's performance constituted an acceptance of the Purchase Orders, they do not mean to suggest or imply that Rectec fully complied with its contractual obligations. They allege that Rectec materially breached its obligations.

13

forum selection clause therein should be enforced.

Forum selection clauses are considered prima facie valid. Carnival Cruise Lines v. Shute, 499 U.S. 585, 589 (1991). The Fifth Circuit presumes that a clause should be enforced, unless the party challenging a clause can carry its "heavy burden of proof." Dorsey v. N. Life Ins. Co., No 04-0342, 2004 U.S. Dist. LEXIS 22443, at *18 (E.D. La. 2004). A forum selection clause will only be held invalid if it is "unreasonable under the circumstances." Mitsui & Co., Inc. v. Mira, 111 F.3d 33, 35 (5th Cir. 1997). One can only prove unreasonableness if that clause "results from fraud or overreaching...it violates strong public policy, or...enforcement of the clause deprives the plaintiff of his day in court." Id.

The forum selection clause here is clearly reasonable. The contract between Allied and Retec, as manifested in the Purchase Orders, was entered into by business entities working in an arms-length environment. No fraud or deception appears in the record; the terms are clearly spelled out in the language of the Orders. Retec is still free to bring its grievance to the appropriate court in the Northern District of Ohio. For the foregoing reasons, this Court find that the plaintiff has not satisfied the first prong of the minimum contacts test and analysis.

2. It would be unreasonable and unfair to force Allied, an

Ohio company, to litigate in Louisiana.

Under the reasonableness prong, which exists to protect defendants against unfairly inconvenient litigation, the exercise of personal jurisdiction will be reasonable if it does not offend "traditional notions of fair play and substantial justice." Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999). Even if a defendant has minimum contacts with a forum, the Court must consider the burden on the defendant in light of other factors, including "the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's right to choose the forum; the interstate judicial system's interest in obtaining the most effective resolution of controversies; and the shared interest of several states in furthering fundamental substantive social policies." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

The Court has found that Allied does not have the sufficient minimum contacts in Louisiana to require it to be hailed into court here. Even if Allied had the requisite contacts with the forum, however, "fair play and justice" dictate a lack of personal jurisdiction. The relevant factors militate against the exercise of personal jurisdiction over Allied. Allied is being hailed into a court that is located far from its place of business and where it has no minimum contacts. It has been forced to retain local

counsel with whom it has no prior professional relationship.  If this lawsuit is allowed to proceed, most of the critical witnesses are located in Ohio (the location of one of the job sites Rectec staffed), Alabama or Pennsylvania.  Additionally, the presence of the forum selection clause and choice of law provisions in the contract with Retec evidences the fact that both parties had reasonable arms-length expectations of litigating any lawsuit in Ohio.  Finally, if the lawsuit were to stay in Louisiana, this Court would be required to apply Ohio law.  This Court finds that adjudicating this dispute in Louisiana would violate the minimum contacts required to exercise due process and would impede any notion of "fair play and substantial justice."  As such, the Court declines to exercise specific jurisdiction over Allied.

    B.    GENERAL JURISDICTION

Unlike the specific jurisdiction analysis, which scrutinizes the connections between the defendant, the cause of action, and the forum, a general jurisdiction inquiry is "dispute blind, the sole focus being on whether there are any continuous and systematic contacts between the defendant and the forum."  Dickson Marine, Inc. V. Panalina, Inc., 179 F.3d 331, 339 (5th Cir. 1999).  Rather than mere "minimum" contacts, "continuous and systematic" contacts must exist between the state and the foreign corporation because "the forum state does not have an interest in the cause of action."  Id.  The Fifth Circuit has noted that the continuous and systematic

test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum."  <u>Submersible Sys., Inc. v. Perforadora Cent.</u>, 249 F.3d 413, 419 (5th Cir. 2001).

The complete lack of contacts between Allied and the state of Louisiana makes an exercise of general jurisdiction unconstitutional under the Due Process Clause.  Allied is an Ohio corporation with its principal place of business in Ohio.  It is not licesnsed to do business in Louisiana and it has no offices, employees, property, bank accounts or other resources in this state.  As the Court has determined, Allied's contacts with Louisiana do not rise to the level of specific jurisdiction.  As such, no reasonable case can be made that Allied's contacts can reach the much higher level of "continuous and systematic" contacts required for general jurisdiction.

Accordingly, Allied's Motion to Dismiss is GRANTED.


New Orleans, Louisiana, May 14, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE